**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

OPW Fueling Components,

      Plaintiff,

    v.                         Case No. 1:06cv187

Daniel Works, *et al.*,               Judge Michael R. Barrett

      Defendants.

**ORDER**

This matter is before the Court upon a Motion for Judgment on the Pleadings (Doc. 11) filed by Plaintiff OPW Fueling Components (Doc. 12); and Motions to Dismiss filed by Third Party Defendants Richard Jones, Lester Rogers, West Chester Township, Andrew J. Schweier, Brian Rebholz, and Jane and John Doe Police Officers of West Chester Township (Docs. 12, 13). Also before the Court are Third Party Plaintiffs' Motion for Leave to File Supplement to the Record (Doc. 30) and Motion to Amend/Correct Counterclaim and Third-Party Complaint (Doc. 31); and Plaintiff and Third Party Defendants' Motion for Sanctions (Spoliation) (Doc. 40). On March 13, 2007, the Court held Oral Argument on these Motions. This matter is now ripe for review.

## I.    **FACTUAL BACKGROUND**

Plaintiff OPW is in the business of manufacturing, assembling, and selling fueling equipment including nozzles, breakaways, and swivels of the type used by customers at filling stations nationwide. (Doc. 3, ¶ 1) OPW also rebuilds this equipment for its customers. (Id.) This equipment includes "Sherex" compressed natural gas nozzles

utilized in filling vehicles with high pressure compressed natural gas. (Id.)

Defendant Danny Works began his employment with OPW in 1973.  (Doc. 4, ¶ 13)  Works was responsible for assembling, rebuilding and testing compressed natural gas nozzles, including the "Sherex" brand line. (Doc. 3, ¶ 2; Doc. 4, ¶¶ 14-15). OPW learned that in addition to his employment with OPW, and in direct competition with OPW, Works operated a business known as CNGN Rebuilds and/or Midwest Natural Gas Nozzles. Works operated this business with his son-in-law, Defendant Scott Estes.  (Id. ¶ 3)  The business rebuilt and sold "Sherex" compressed natural gas nozzles. (Doc. 3, ¶ 2; Doc. 4 ¶ 17-18).

In January of 2005, Estes contacted Third Party Defendant Lester Rogers about applying for certification from OPW to repair "Sherex" nozzles.  (Doc. 4, ¶ 19)

In April of 2005, OPW discovered that Works was removing compressed natural gas nozzles from OPW's business premises for his business.  (Doc. 3, ¶ 5)[1]  Works maintains that before removing such material, he always maintained permission from his supervisors. (Doc. 4, ¶ 20)

OPW installed a surveillance camera in a common area.  (Doc. 3, ¶ 12)  The surveillance showed that Works was removing property from OPW's business premises. (Id., ¶ 13)  Third Party Defendant Richard Jones reported Works' actions to the West Chester Police Department ("Police" or "Police Department").  (Id., ¶ 14)  The Police initiated a theft investigation. (Id., ¶ 14) As part of the investigation, Third Party Defendant Detective Andrew Schweier posed as a customer and contacted Estes.  (Doc. 4, ¶ 25)

---

[1]There is evidence in the record that these nozzles sell for an amount between $2,200.00 and $3,000.00.  (Doc. 12, Ex. A, at 4)

On August 11, 2005, the Police filed a charge of felony grand theft against Works; and on September 16, 2005 filed a charge of felony receiving stolen property against Estes.  (Doc. 4, ¶¶ 27-28)  Third Party Defendant Brian Rebholz signed the Complaints. (Id., ¶¶ 27, 28)

Warrants were issued for the arrest of both Works and Estes.  (Id.)  On September 16, 2005, Officer John Doe arrested Works and Schweier arrested Estes.  (Id., ¶¶ 29, 30) While arresting Estes at Works' and the Estes' residence, the Police also applied for and received a warrant to search the home.  (Id., ¶ 32)  The Police also searched a garage from which Works and Estes ran their business. (Doc. 3, ¶ 26)  A search of the garage revealed OPW property, including compressed natural gas nozzles, OPW catalogues, and a laptop containing listings of OPW customers, suppliers, and distributors.  (Id., ¶ 27-28) Rogers was present, and pointed out material which he claimed belonged to OPW.  (Id., ¶ 33)

On October 6, 2005, a preliminary hearing was held in state court with regard to the charges against Works and Estes.  (Doc. 4, ¶ 34).  Jones and Schweier testified at the hearing.  (Id.)  The state court judge determined that the State presented sufficient evidence to demonstrate probable cause that Works and Estes had committed the crimes of which they had been accused.  (Doc. 12, Ex. A, Preliminary Hearing Transcript, at 22) The matter was bound over to the grand jury and again, Jones was called as a witness before the grand jury.  (Doc. 4, ¶ 35)  The grand jury eventually returned a "no bill" on the charges.  (Id.)

On January 19, 2006, Works and Estes filed a motion to compel the Police to return the material confiscated during the search of Work's residence.  (Id., ¶ 36)  On February

14, 2006, a state court judge overruled the objection of OPW to the return of the property based on his finding that OPW had no standing to object.  (Id., ¶ 37)

At the time of the filing of the Complaint, the property was still in the possession of the Police Department. Therefore, in its Complaint, OPW seeks a declaration as to who owns the property seized from the garage and brings a claim of replevin against the Police Department.[2]  OPW also brings a claim for conversion against Works and Estes.

Works and Estes filed a Counterclaim against OPW, and along with Danielle Estes, brought a Third Party Claim against Richard Jones, Lester Rogers, West Chester Township, Andrew Schweier, Brian Rebholz, and police officers John and Jane Doe.  In their Counterclaim/Third Party Claim, Works and the Estes claim that under a theory of *respondeat superior*, OPW should be held liable for the claims asserted against the individual Third Party Defendants, Richard Jones and Les Rogers.  Works and the Estes claim that Jones and Rogers are liable for malicious prosecution based upon participation in the investigation, arrest, and prosecution of Works and Estes.  Works and the Estes also claim that Jones and Rogers caused the criminal proceedings to be instigated to provide grounds to terminate Works.  Works and the Estes' claims against Schweier and the Does are for unlawful entry based upon a facially invalid arrest warrant; false arrest; unreasonable seizure, and malicious prosecution.  Works and the Estes are seeking a declaration that Schweier and Rebholz issued the warrants for their arrest as a part of a

---

[2]At Oral Argument, the Parties informed the Court that a settlement agreement had been reached regarding the possession of the property.  As a result, OPW stated that its Motion For Emergency Order Of Possession (Filed in State Court) (Doc. 5) could be denied as moot.  This settlement agreement is also the subject of Defendants' Motion to Enforce Settlement Agreement (Doc. 42), which is set for hearing on May 16, 2007.

pattern and practice that violates the Fourth and Fourteenth Amendments.  Works and the Estes have also brought a claim against the West Chester Township for "township liability," claiming that West Chester has a practice or custom of issuing facially-invalid warrants.

## II.    ANALYSIS

### A.    Motion for Leave to File Supplement to the Record

Third Party Plaintiffs would like to enter into the record a copy of the West Chester Police Department's Policy and Procedural Manual.  The Township opposes the Motion because it is untimely, the Manual was improperly obtained, and is duplicative.  For good cause shown, the Court finds that the Motion for Leave (Doc. 30) is GRANTED.  The Manual, attached to the Motion, will be considered by the Court in ruling upon the West Chester Third Party Defendants' Motion to Dismiss.

### B.    Motion to Amend/Correct Counterclaim and Third Party Complaint

Counterclaimants/Third Party Plaintiffs would like to amend their Complaint to clarify their allegations.  The Third Party Defendants oppose the amendment because the motion was filed beyond the August 1, 2006 deadline for filing any motion to amend the pleadings; and the amendments would be futile.

Federal Rule of Civil Procedure 15(a) provides:

> A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served.  Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

In *Foman v. Davis*, 371 U.S. 178, 182 (1962), the Supreme Court explained that a motion to amend generally should be granted:

> In the absence of any apparent or declared reason--such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.--the leave sought should, as the rules require, be "freely given."

The Court finds that because the Amended Counterclaim and Third Party Complaint does not add any new claims, but is a clarification of previously-made claims, the Motion to Amend (Doc. 31) is hereby GRANTED.

It is not necessary for Plaintiff OPW or the Third Party Defendants to file a new motion to dismiss the Amended Counterclaim/Third Party Complaint:

> . . . defendants should not be required to file a new motion to dismiss simply because an amended pleading was introduced while their motion was pending.  If some of the defects raised in the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading.  To hold otherwise would be to exalt form over substance.

6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1476 (2d ed.1990); *see also Yates v. Applied Performance Technologies, Inc.*, 205 F.R.D. 497, 499 (S.D. Ohio 2002).   Therefore, the Court will consider the motions of OPW and the Third Party Defendants as if they were directed toward the Amended Counterclaim and Third Party Complaint.

## C.    Standards of Review

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) attacks the sufficiency of the pleadings and is evaluated under the same standard as a motion to dismiss.  *Thomas v. Gee*, 850 F.Supp. 665, 668 (S.D. Ohio 1994), *citing*, *Amersbach v. City of Cleveland*, 598 F.2d 1033, 1038 (6th Cir. 1979).  In ruling upon such motion, the Court must accept as true all well-pleaded material allegations of the pleadings

of the opposing party, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment. *Id.*, *citing*, *Southern Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973).

A motion to dismiss under Rule 12(b)(6) requires this Court to construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle relief. *Meador v. Cabinet for Human Resources*, 902 F.2d 474, 475 (6th Cir.1990), *cert. denied*, 498 U.S. 867 (1990). "However, while liberal, this standard of review does require more than the bare assertion of legal conclusions." *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir.1995); *see also Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986) ("It is not enough for a complaint . . . to contain mere conclusory allegations of unconstitutional conduct by persons acting under color of state law. Some factual basis for such claims must be set forth in the pleadings.").

### D.    Third Party Defendants Jones and Rogers

Third Party Defendants Jones and Rogers argue that all claims against them should be dismissed under Rule 12(b)(6). Jones and Rogers argue that they were private actors acting upon sufficient and probable cause. Jones and Rogers explain that Works and the Estes cannot show section 1983 liability on their part as private actors either under the public function test, or the nexus test. As to the tortious interference claim, Jones and Rogers argue that Ohio does not recognize a claim for tortious interference with employment relations against "insiders" acting within the scope of their duties as supervisory employees. Finally, Jones and Rogers argue that the claims of malicious

prosecution must fail because the state court judge determined that there was probable cause for the charges brought against Works and Estes.

### 1.  Tortious interference

During Oral Argument, counsel for Works and the Estes stated that this is not a viable claim, and it should be dismissed.  Accordingly, the claim for tortious interference is DISMISSED.

### 2.  Private actor liability

Section 1983 imposes civil liability on a person acting under color of state law who deprives another of the "rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983.  Therefore, a plaintiff must allege two elements to establish a *prima facie* case under section 1983: (1) that the action occurred "under color of law"; and (2) that the action was a deprivation of a constitutional right or a federal statutory right. *Parratt v. Taylor,* 451 U.S. 527, 535 (1981) *overruled on other grounds by Daniels v. Williams,* 474 U.S. 327 (1986).

Liability under section 1983 is not limited to state actors.  "[A] private entity can be held to constitutional standards when its actions so approximate state action that they may be fairly attributed to the state." *Lansing v. City of Memphis*, 202 F.3d 821, 828 (6th Cir.2000).

The Sixth Circuit recognizes three tests for determining the existence of state action: (1) the public function test, (2) the state compulsion test, and (3) the symbiotic relationship or nexus test. *Chapman v. Higbee Co.*, 319 F.3d 825, 833 (6th Cir. 2003), *citing*, *Wolotsky*, 960 F.2d at 1335.  Works and the Estes maintain that the actions of Jones and Rogers constitute state action under the symbiotic relationship or nexus test.

"Under the symbiotic or nexus test, a section 1983 claimant must demonstrate that there is a sufficiently close nexus between the government and the private party's conduct so that the conduct may be fairly attributed to the state itself."  *Chapman*, 319 F.3d at 834, *citing*, *Wolotsky*, 960 F.2d at 1335.  "[I]t must be demonstrated that the state is intimately involved in the challenged private conduct in order for that conduct to be attributed to the state for purposes of Section 1983."  *Wolotsky*, 960 F.2d at 1335.  In determining whether a private party's conduct is "fairly attributable," the Supreme Court has explained:

> What is fairly attributable is a matter of normative judgment, and the criteria lack rigid simplicity.  From the range of circumstances that could point toward the State behind an individual face, no one fact can function as a necessary condition across the board for finding state action; nor is any set of circumstances absolutely sufficient, for there may be some countervailing reason against attributing activity to the government.

*Brentwood Academy v. Tennessee Secondary School Athletic Ass'n*, 531 U.S. 288, 295-96 (2001).  Even thought this inquiry is "necessarily fact-bound," *Lugar v. Edmonson Oil Co., Inc*, 457 U.S. 922, 939 (1982), the Sixth Circuit has laid out some general principles: (1) state regulation, even when extensive, is not sufficient to justify a finding of a close nexus between the state and the regulated entity; (2) neither public funding not private use of public property is enough to establish a close nexus between state and private actors; (3) the minority presence of public officials on the board of a private entity does not render the entity a state actor; nor does the mere approval or acquiescence of the state in private activity; (4) utilization of public services by private actors does not convert private action to state action.  *Lansing v. Memphis*, 202 F.3d 821, 830-31 (6th Cir. 2000).

The Court finds that Works and the Estes have sufficiently alleged state action on the part of Jones and Rogers.  In the Amended Counterclaim and Third Party Complaint,

Works and Estes allege that Jones and Rogers conducted their own investigation of Works and presented that information to the West Chester Police.  Works and Estes allege further that Rogers was present during the execution of the search warrant of Works' home; and Jones testified at certain hearings.  At this stage in the proceedings, the Court finds that these allegations support a section 1983 claim against Jones and Rogers.  As a result, the Court DENIES Jones and Rogers Motion to Dismiss Works and the Estes' section 1983 claims against them based on a failure to allege state action.

### 3.    Malicious prosecution (Constitutional law)

Prosecution without probable cause is a violation of the Fourth Amendment, and is actionable under section 1983.  *Spurlock v. Satterfield*, 167 F.3d 995, 1006 (6th Cir. 1999); *Thacker v. City of Columbus*, 328 F.3d 244, 259 (6th Cir. 2003). The Sixth Circuit has explained that although it "has yet to resolve the elements of a federal malicious prosecution claim, it is clear that a plaintiff must show, at a minimum, 'that there was no probable cause to justify [his] arrest and prosecution.' " *Thacker*, 328 F.3d at 259, *quoting*, *Darrah v. City of Oak Park*, 255 F.3d 301, 312 (6th Cir. 2001); *see also Barnes v. Wright*, 449 F.3d 709, 715-16 (6th Cir. 2006).

Jones and Rogers argue that Works and the Estes have failed to establish a lack of probable cause.  Jones and Rogers point to the transcript of the preliminary hearing before the state court, which shows that the judge determined that there was probable cause and bound the matter over to the grand jury.

The Sixth Circuit has held that "where a state affords an opportunity for an accused to contest probable cause at a preliminary hearing and the accused does so, a finding of probable cause by the examining magistrate or state judge should foreclose relitigation of

that finding in a subsequent § 1983 action." *Coogan v. City of Wixom*, 820 F.2d 170, 174-75 (6th Cir. 1987), *overruled on other grounds by Frantz v. Village of Bradford*, 245 F.3d 869, 874 (6th Cir. 2001).  Only where there is evidence of false statements or misrepresentations by law enforcement officials during the criminal proceeding does the finding of probable cause in a preliminary state criminal hearing lose its preclusive effect. *See Hinchman v. Moore*, 312 F.3d 198, 202-03 (6th Cir. 2002); *Darrah v. City of Oak Park*, 255 F.3d 301, 311 (6th Cir. 2001).  Here, Works and the Estes do not argue that they were unable to contest probable cause at a preliminary hearing.  Instead, the allege that Jones and Rogers knew or should have known that the charges against them were false, lacked probable cause, or were reckless in that regard.

At the preliminary hearing, Jones testified that he was not aware of anyone giving Works permission to the remove the nozzles on April 15, 2005–the date Works was videotaped.  However, Jones stated that he later learned that Works had been given permission to remove some materials in August of 2005.  It is not clear from the state court record whether these statements by Jones were false or misleading or merely indicate a incomplete investigation on behalf of Jones and Rogers.  At this stage of the proceedings, based upon these statements, in combination with the allegations contained in the Amended Counterclaim and Third Party Complaint, the Court must find that Works and the Estes have properly alleged a lack of probable cause.  As a result, the Court DENIES Jones and Rogers Motion to Dismiss Works and the Estes' claim for malicious prosecution under section 1983.

### 4. **Malicious prosecution (Ohio law)**

In Ohio, the elements of malicious prosecution are: (1) malicious institution or

continuation of prior proceedings; (2) lack of probable cause; and (3) termination of the prior proceedings in the plaintiff's favor. *Trussell v. Gen. Motors Corp.*, 559 N.E.2d 732, 734 (1990). The Ohio Supreme Court defines "malice" for purposes of a malicious prosecution claim as "an improper purpose, or any purpose other than the legitimate interest of bringing an offender to justice." *Criss v. Springfield Twp.*, 564 N.E.2d 440, 443 (1990). If prosecution is instituted absent probable cause, malice may be inferred. *See Mayes v. City of Columbus*, 664 N.E.2d 1340, 1346 (1995).

However, under Ohio law, as in federal law, there is a legal presumption of probable cause if a bind over order or an indictment results, unless the related preliminary hearing or grand jury proceeding received perjured testimony or was otherwise significantly irregular. *See Adamson v. May Co.*, 456 N.E.2d 1212, 1215 (Ohio App. 1982) (and cases cited therein). Because Works and the Estes have alleged that false testimony was presented at the preliminary hearing, there are sufficient allegations that the hearing was irregular, and the Court must find that they have shown a lack of probable cause. Therefore, the Court DENIES Jones and Rogers Motion to Dismiss Works and the Estes' claim for malicious prosecution under Ohio law.

### E. OPW

OPW argues that all claims against it asserted in the Counterclaim should be dismissed. Specifically, OPW argues that OPW cannot be held liable under a theory of *respondeat superior* because the causes of action against its employees, Jones and Rogers, fail as a matter of law. In light of the Court's above ruling, the above claims remain pending against Jones and Rogers. Therefore, any claims pending against OPW on the basis of *respondeat superior* must survive. As a result, the Court DENIES OPW's

Motion for Judgment on the Pleadings.

     **F.    West Chester Third Party Defendants**

The West Chester Third Party Defendants argue that the claims against them should be dismissed because Works and the Estes have failed to allege facts sufficient to state a claim under the 4th and 14th Amendments. The West Chester Defendants also raise the defense of qualified immunity and argue that there is no municipal liability.

     **1.    Municipal liability**

For section 1983 liability to attach to a municipality, a plaintiff must offer proof of a wrongful or injurious policy or custom on the part of the city and a causal link between the policy or custom and her constitutional deprivation. *City of Canton v. Harris*, 489 U.S. 378, 385-86 (1989). A municipality cannot be sued on a *respondeat superior* basis. *Monell v. Department of Social Servs.*, 436 U.S. 658, 691 (1978). The municipality can only be liable if its policy or custom played a part in the alleged violation. *Berry v. Detroit*, 25 F.3d 1342, 1345 (6th Cir.), *cert. denied*, 115 S. Ct. 902 (1994). A plaintiff must show that the city's policy, or lack of policy, was a "moving force" in the deprivation of the plaintiff's rights and arose from "deliberate indifference" to the plaintiff's rights. *Doe v. Claibome County, Tennessee*, 103 F.3d 495, 508 (6th Cir. 1996). As this Court has explained: "To show the existence of an offending custom or policy, plaintiffs must adduce specific facts supporting their claim; conclusory allegations are insufficient." *Games Galore of Ohio, Inc. v. Masminster*, 154 F.Supp.2d 1292, 1300 (S.D.Ohio 2001), *citing*, *Taylor v. Canton Police Dep't*, 544 F.Supp. 783 (N.D.Ohio 1982).

Works and the Estes claim that West Chester Township has a policy, practice, or custom of issuing facially invalid warrants. Works and the Estes maintain that the affidavits

in support of the warrants are insufficient; and the affidavits and complaints are never presented to a neutral magistrate for an independent determination of probable cause. Works and the Estes point out that it was Officer Schweier who signed the complaints, and then Sergeant Rebholz signed as the "Notary Public/Deputy Clerk/Judge."  Works and the Estes argue that this practice is part of a custom on the part of the Township.  Works and the Estes have supplemented the Record with an excerpt from the West Chester Police Department's Policy and Procedural Manual.  The Manual instructs officers to complete a complaint form and present the complaint form to a supervisor for review.  The supervisor will then swear the officer to the truth and accuracy of the information, and witness the signature of the officer.  The supervisor is also responsible for reviewing the complaint form and verifying that probable cause exists.  The completed complaint form, along with other documents, are forwarded to the Warrant Processing Section.

While the Court finds that Works and Estes have sufficiently alleged a custom or policy,[3] the Court concludes that the alleged custom or policy is not unconstitutional as a matter of law.

In *Shadwick v. City of Tampa*, 407 U.S. 345, 350 (1972), the Supreme Court held that a municipal court clerk qualifies as a neutral and detached judicial officer for purposes of issuing warrants for violations of municipal ordinances.  Here, the complaints, signed by Officer Schweier and Sergeant Rebholz, were presented to the Clerk of the Butler County Court.  The Clerk then issued warrants for the arrest of Works and Estes.  Ohio Rule of

---

[3]In *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 824 (1985), the Supreme Court explained that proof of a single incident can establish liability where a policy giving rise to that incident is proved.

Criminal Procedure 4(A)(1) gives the clerk the authority to issue a warrant if there is probable cause to believe that an offense has been committed. Works and the Estes do not challenge the constitutionality of this rule, but instead challenge the officers' practice of availing themselves to the procedure under this rule. This Court has previously found that such a custom or policy is not unconstitutional. *See Sampson v. City of Xenia*, 108 F.Supp.2d 821, 836 (S.D. Ohio 1999); *Rice v. Leis*, 2005 WL 3216626, *5 (S.D.Ohio 2005) (unpublished). Therefore, to the extent that Works and the Estes' section 1983 claim is based upon the issuance of the arrest warrants by the Butler County Clerk, that claim is DISMISSED.[4]

### 2. Qualified Immunity

Third Party Defendants Schweier, Rebholz, and Jane and John Doe Police Officers argue that they are entitled to qualified immunity from Works and the Estes' section 1983 claims.

The doctrine of qualified immunity protects government officials acting in their official capacities from damages if their actions did not "violate clearly established statutory or constitutional rights of which a reasonable person [in their positions] would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), *citing Procunier v. Navarette*, 434 U.S. 555, 565 (1978). Qualified immunity involves a two-step inquiry: (1) whether, considering

---

[4]To the extent that Works and the Estes claim that there must be a determination of probable cause by a neutral and detached magistrate before a complaint is filed with the Clerk, the Court also rejects that claim. Works and the Estes do not point to any caselaw to support this position, and as Rule 4 of the Ohio Rules of Criminal Procedure instructs, the finding of probable cause is to be made by "a judge, magistrate, clerk of court, or officer of the court designated by the judge" upon the filing of the complaint. The more troubling issue, and one which is not raised here, is whether there is actually a determination of probable cause being made by the Clerk before signing and authorizing the arrest warrant, or if the Clerk merely signs the form *pro forma*.

the allegations in a light most favorable to the party injured, a constitutional right has been violated, and if so, (2) whether that right was clearly established.  *Ciminillo v. Streicher*, 434 F.3d 461, 466 (6th Cir. 2006), *citing Saucier v. Katz*, 533 U.S. 194, 201 (2001).

While the defendant bears the burden of pleading the defense of qualified immunity, the ultimate burden of proof is on the plaintiff to show that the defendant is not entitled to qualified immunity.  *Miller v. Administrative Office of Courts*, 448 F.3d 887, 894 (6th Cir. 2006), *citing Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006).

The section 1983 claims which have been brought against Schweier, Rebholz, and Jane and John Doe Police Officers are violations of the Fourth and Fourteenth Amendments for unlawful entry, false arrest, unreasonable seizure, malicious prosecution.

### 3.  Fourteenth Amendment

The Due Process Clause of the Fourteenth Amendment prohibits states from depriving "any person of life, liberty, or property without due process of law."  U.S. Const. amend. XIV, § 1.  However, it is the Fourth Amendment, not the Due Process Clause, that establishes protections in the criminal justice system.  *See Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 313 (6th Cir. 2005).  The Fourth Amendment was "tailored explicitly for the criminal justice system, and its balance between individual and public interest always has been thought to define the 'process that is due' for seizures of persons or property in criminal cases, including detention of suspects pending trial."  *Id.*, *quoting Gerstein v. Pugh*, 420 U.S. 103, 125 n. 27 (1975).  The Due Process Clause does not mandate any additional safeguards beyond the Fourth Amendment.  *Id.*  Therefore, Works and the Estes' claims will be analyzed under the Fourth Amendment.

4.    **False arrest**

The Fourth Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment, reads, in pertinent part, "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

The Fourth Amendment requires that arrest warrants be issued only upon a showing of probable cause. *Greene v. Reeves*, 80 F.3d 1101, 1105 (6th Cir. 1996). "Where qualified immunity is asserted, the issue of probable cause is one for the court since 'the entitlement is immunity from suit rather than a mere defense to liability.' " *Vakilian v. Shaw*, 335 F.3d 509, 517 (6th Cir. 2003), *quoting Hunter v. Bryant*, 502 U.S. 224, 227-28 (1991).

In general, an investigator or police officer is entitled "to rely on a judicially secured warrant for immunity from a § 1983 action for illegal search and seizure unless the warrant is so lacking in indicia of probable cause that official belief in the existence of probable cause is unreasonable." *Yancey v. Carroll County*, 876 F.2d 1238, 1243 (6th Cir. 1989), *citing Malley v. Briggs*, 475 U.S. 335, 344-45 (1986). However, an officer "cannot rely on a judicial determination of probable cause if that officer knowingly makes false statements and omissions to the judge such that but for these falsities the judge would not have issued the warrant." *Vakilian v. Shaw*, 335 F.3d 509, 517 (6th Cir. 2003). To overcome an officer's entitlement to qualified immunity a plaintiff must establish: (1) a substantial showing that the defendant stated a deliberate falsehood or showed reckless disregard for the truth and (2) that the allegedly false or omitted information was material to the finding of probable cause. *Id*.

Works and the Estes argue that based upon Schweier's testimony at the preliminary

hearing, Schweier did not ask Works' direct supervisor whether Works had permission to remove the nozzles; and Schweier did not have personal information whether Works had permission to remove certain nozzles. The Court finds that the failure to ask Works' direct supervisor whether he had permission to remove the nozzles is insufficient for a showing of reckless disregard for the truth. When Jones contacted the Police and explained that he suspected Works was stealing the nozzles, it was implied that Works did not have permission to do so. Schweier testified that he did not learn that Works had been given permission to remove some of the materials until after the filing of the complaint. Also, there is no evidence that the information Jones provided to Schweier was not credible or that Schweier should have questioned its credibility. Moreover, once probable cause is established, an officer is under no duty to investigate further or to look for additional evidence which may exculpate the accused. *Ahlers v. Schebil*, 188 F.3d 365, 371 (6th Cir. 1999).

However, the Court finds merit in Works and the Estes' argument that the warrant was facially invalid. In *Sampson v. City of Xenia*, this Court explained that a complaint that alleges the requisite statutory elements and includes a "bare bones" recitation of facts is sufficient to establish probable cause for arrest only when the complaint indicates a source or basis for the complainant's beliefs. 108 F.Supp.2d at 837. This Court explained that the complaint need not be based upon personal knowledge in order to establish probable cause, but the complainant's basis of knowledge must be apparent on the face of the complaint. *Id.*, *citing City of Dayton v. Perkins*, 1983 WL 4806 (Ohio Ct. App. Feb. 9, 1983) (unpublished); *see also United States v. Fachini*, 466 F.2d 53, 56 (6th Cir. 1972) (noting that a complaint must provide an affiant's answer to the hypothetical question, "What

makes you think that the defendant committed the offense charged?").  The complaint filed against Works alleges the property stolen, its value, the date it was stolen, and how it was stolen, but provides no basis for this knowledge.  The complaint filed against Estes describes the alleged stolen property Estes received, and the actions Estes took once he received the property, but also fails to provide the basis for this knowledge.  Therefore, the Court finds that the complaints are facially insufficient to establish probable cause to arrest Works and Estes.

Nevertheless, the Court finds that there was probable cause for the officers to arrest Works and Estes.  *See United States v. Fachini*, 466 F.2d at 57 (explaining that even if an arrest warrant is facially invalid, a showing of probable cause is sufficient to justify arrest).  For a police officer to have probable cause for arrest, there must be "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing or is about to commit an offense." *Crockett v. Cumberland College*, 316 F.3d 571, 580 (6th Cir. 2003), *quoting Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979).  "In general, the existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible." *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995).

The Amended Complaint states that Schweier received information from Jones that Works was stealing material from OPW and selling that material on the secondary market through Estes.  Specifically, Jones had surveillance film of Works placing two nozzles in his lunch pail; and had information from a private investigator that Estes was selling nozzles and was related to Works.  In addition, the Amended Third Party Complaint states

that Schweier posed as a customer and contacted Estes to buy rebuilt nozzles.  The Amended Complaint states further that Schweier then intercepted a shipment of two compressed natural gas nozzles which he had ordered posing as a customer.  Based on these alleged facts, the Court finds that Schweier had sufficient knowledge to warrant a reasonable person to conclude that a crime had been committed.

Finally, with regards to Officer John Doe, who arrested Works, the Court finds that this officer is also entitled to qualified immunity.  The Sixth Circuit has held that under the doctrine of collective knowledge, for purposes of establishing probable cause, information is imputed to all officers working in close communication.  *U.S. v. Yoon*, 398 F.3d 802, 812-13 (6th Cir. 2005) (Gilman, R. dissenting), *citing Collins v. Nagle*, 892 F.2d 489, 495 (6th Cir. 1989) (noting that "[m]any circuits, including our own, have determined that probable cause may be established from the collective knowledge of the police rather than solely from the officer who actually made the arrest" ); *United States v. Woods*, 544 F.2d 242, 260 (6th Cir. 1976) (describing the collective knowledge theory as imputing mutual knowledge to "a group of agents in close communication with one another [who] determine[ ] that it is proper to arrest an individual . . . ." ).

Therefore, the Court concludes that Schweier, Rebholz, and Jane and John Doe Police Officers are entitled to qualified immunity against Works and the Estes' claim for false arrest.  Accordingly, this claim is DISMISSED.

### 5.  Unreasonable seizure

Works brings an unreasonable seizure claim based upon his arrest.  The Amended Complaint states that Works was arrested while he was at work at OPW.  Works was taken in handcuffs through the plant to the front door, and then escorted to the police cruiser,

which was parked near the rear entrance. Works argues that it was unreasonable to arrest him at his workplace. Works also argues that it was unreasonable to lead him in handcuffs through the plant instead of returning through the rear entrance, which was the more direct route to the parked cruiser.

Even if there is probable cause for an arrest, the Fourth Amendment requires that the means used to effect the arrest be reasonable, which is determined by balancing the extent of the intrusion against the need for it. *Dugan v. Brooks*, 818 F.2d 513, 516 (6th Cir. 1987), *citing Tennessee v. Garner*, 471 U.S. 1, 7 (1985).

Works and the Estes rely upon the Second Circuit's decision in *Caldarola v. County of Westchester*, 343 F.3d 570 (2d Cir. 2003) to argue that Works was subjected to an unconstitutional "perp walk." In *Caldarola*, a county employee made a videotape of the arrest of several corrections officers. *Id.* at 572. The tape showed the officers as they were being escorted from the department of corrections building, through the parking lot, to cars waiting to take them to the police station for booking. *Id.* The county later held a press conference, showed the tape, and distributed it to the media. *Id.*

The *Caldarola* court recognized that under Supreme Court precedent, the seizure of a person's image through a recording device constitutes a seizure under the Fourth Amendment. *Id.* at 574. The court also found that the under the circumstances of the case before it, the county's creation and dissemination of the videotape implicated privacy interests protected by the Fourth Amendment. *Id.* at 575. However, the court found that the officer's reasonable expectation of privacy while on the grounds of the department of corrections building was minimal. *Id.*

The court then went on to balance the officer's privacy interest against the

government's legitimate government purpose for the making and release of the videotape. *Id.* at 576. The court recognized that some events, such as the arrest of corrections officers on grand larceny charges, are "highly newsworthy and of great interest to the public at large," and that the government has an interest in allowing media coverage of such events to inform the public of its role in those events. *Id.* The court explained that divulging the arrests to the media, "enhances the transparency of the criminal justice system, and it may deter others from committing similar crimes, " and "allowing the public to view images of an arrestee informs and enables members of the public who may come forward with additional information relevant to the law enforcement investigation." *Id.*

The *Caldarola* court distinguished the case before it from an earlier Second Circuit decision: *Lauro v. Charles*, 219 F.3d 202 (2d Cir. 2000). The court distinguished *Lauro* on the ground that the perp walk in that case had been staged. 343 F.3d at 576. The *Caldarola* court also distinguished the case from the Supreme Court's decision in *Wilson v. Layne*, 526 U.S. 603, 615 (1999). In *Wilson*, the Supreme Court held that "it is a violation of the Fourth Amendment for police to bring members of the media or other third parties into a home during the execution of a warrant when the presence of the third parties in the home was not in aid of the execution of the warrant." *Id.* at 614. The *Caldarola* court explained that the plaintiff in the case before it had a diminished reasonable expectation of privacy, unlike the substantial privacy interest a person possesses in his or her home which was at issue in *Wilson*. 343 F.3d at 576-77. The court concluded that "[b]ecause there was a minimal expectation of privacy in the parking lot, and the conduct of the arresting officers did not unreasonably exceed the scope of what was necessary to effectuate the arrest and to otherwise serve legitimate government

purposes," the government had not overstepped the bounds of reasonableness in the course of the seizure.  *Id.* at 577.

Here, there are no allegations of media coverage of Works' arrest.  As in *Caldarola*, there are no allegations that the arrest of Works was staged.  Also as in *Caldarola*, Works had a diminished expectation of privacy because the arrest took place at his workplace and not in the privacy of his home.  Schweier, Rebholz, and Jane and John Doe Police Officers argue that this privacy interest is outweighed by the government's legitimate purpose of keeping the public informed of their law enforcement efforts and encouraging witnesses to step forward with information relevant to the case.  The Court agrees.

The Court finds that this case is analogous to the decision of the District Court for the Eastern District of Michigan in *Watkins v. City of Highland Park*, 232 F.Supp. 744 (E.D. Mich. 2002).  There, the plaintiff was arrested during a police raid of a "techno" music and dance party in a hall leased by the plaintiff's corporation.  *Id.* at 746.  The plaintiff argued that the police acted unreasonably in carrying out his arrest by placing him in handcuffs and leading him past television cameras to a squad car instead of escorting him out the nearest exit.  *Id.* at 746, 757.  The court noted that there was no evidence that there was a "fictional recreation" of an arrest or that plaintiff's arrest had been "choreographed."  *Id.* at 759, 760, *quoting Caldarola v. County of Westchester*, 142 F.Supp.2d 431, 433 (S.D.N.Y. 2001), *aff'd Caldarola v. County of Westchester*, 343 F.3d 570 (2d Cir. 2003), and *Otero v. Town of Southampton*, 194 F.Supp.2d 167, 181 (E.D.N.Y. 2002).  The court found that officer's conduct was not unconstitutional because it served a legitimate law enforcement purpose.  *Id.* at 760.  As the court explained:

The Court is quite willing to assume that Plaintiff would have voluntarily

cooperated with law enforcement officials if he had not been arrested, and that, even after learning of the order to arrest him, Plaintiff would have submitted to this procedure without the need for the arresting officers to employ handcuffs or any other forcible means whatsoever. The Court further accepts Plaintiff's premise that Defendants' handling of the situation would not have suffered greatly, or perhaps at all, if they had acceded to Plaintiff's request that he be escorted out a different exit rather than led past the camera crew at the Midland Street entrance.  What the Court is unwilling to do, however, is to scrutinize the conduct of police officers to ensure that their arrests are performed in some sort of optimal, preferred, or least intrusive manner.   All that the Fourth Amendment requires is that arrests be reasonable.   Nothing that Defendants did in this case, whether placing Plaintiff in handcuffs or leading him out one entrance versus another, remotely offends this constitutional command, where all of these measures are wholly routine police practices.

*Id.* at 760-61.[5]  Therefore, the court concluded that the plaintiff's challenge to the manner of his arrest failed as a matter of law.  *Id.* at 761.  This Court concludes the same.  There is no indication that Works would not have voluntarily cooperated with the officers if he had not been arrested or if handcuffs had not been used.  The Court also concludes that the officers certainly could have used the rear entrance of the OPW building to escort Works to the cruiser, but like the court in *Watkins*, this Court finds that it is not in the position to ensure that arrests are performed in the least intrusive manner.  Finally, while the officers could have arrested Works at his home, instead of at his workplace in front of his co-workers, it was not unreasonable for the officers to do so.  The workplace arrest serves the legitimate purposes of signaling witnesses to come forward with information, and deterring others from committing similar crimes.  Therefore, the Court finds that there was no constitutional violation as a matter of law, and Schweier, Rebholz, and Jane and John Doe

---

[5]While the Court does agree with the result the *Watkins* court reached based upon the facts presented, the Court does not adopt the notion that a police practice is constitutional because it is "wholly routine."  The Court reads this possible interpretation of the opinion as unintended by the *Watkins* court.

Police Officers are entitled to qualified immunity against Works and the Estes' claim for unreasonable seizure.  Accordingly, this claim is DISMISSED.

### 6.    Unlawful entry

Works and the Estes argue that the search of their home violated the Constitution because the warrants for the arrest of Works and Estes were not valid.  The West Chester Defendants have submitted a written consent form signed by Brenda Works, the wife of Daniel Works; and argue that even if the warrants were not valid, Ms. Works consented to the search.  Works and the Estes argue that the consent form is immaterial because the allegedly unlawful search occurred before the form was signed.

The "chief evil" against which the Fourth Amendment protects is the "physical entry of the home."  *Payton v. New York*, 445 U.S. 573, 585 (1980).  The Fourth Amendment requires that searches of the home be reasonable.  *Illinois v. Rodriguez*, 497 U.S. 177, 185-86 (1990).  This reasonableness requirement generally requires that police obtain a warrant based upon a judicial determination of probable cause prior to entering a home.  *Payton*, 445 U.S. at 585-86.  However, there are a few well-defined and carefully circumscribed circumstances in which a warrant will not be required.  *Thacker*, 328 F.3d at 252.  One such exception is where "voluntary consent is given to the search by the owner of the home or property" or by someone with apparent authority to consent.  *United States v. Campbell*, 317 F.3d 597, 608 (6th Cir. 2003).  The voluntariness of the consent is a question of fact to be determined under the "totality of the circumstances."  *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973).  Accepting as true Works and the Estes' allegation that consent was not given, as this Court must, the Court finds that this exception to the warrant requirement is not applicable.

However, the Supreme Court has held that "an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Payton*, 445 U.S. at 603. Even though the Court has found that the arrest warrant for Estes was facially invalid, Officer Schweier and Doe could in good faith rely on the warrant. *See United States v. Leon*, 468 U.S. 897, 919-21 (1984) (police may rely on invalid search warrant if that reliance is reasonable under the circumstances, including that officer has no reason to believe warrant or information on which it is based is invalid or insufficient); *U.S. v. Gordon*, 1995 WL 108988, *4 (6th Cir. 1995) (unpublished) (explaining that application of *Leon's* exclusionary rule should be limited to those situations where its remedial objectives are best served, *i.e.*, to deter illegal police conduct rather than the errors of judges, magistrates and their staff).

Yet, the Supreme Court has also instructed that "[i]f the scope of the search exceeds that permitted by the terms of a validly issued warrant or the character of the relevant exception from the warrant requirement, the subsequent seizure is unconstitutional without more." *Wilson v. Layne*, 526 U.S. 603, 611 (1999), *citing Horton v. California*, 496 U.S. 128, 140 (1990). In *Maryland v. Buie*, 494 U.S. 325 (1990), the Supreme Court held that law enforcement officers are permitted to conduct a protective sweep of areas near a defendant subject to arrest, but that such a sweep must "last[ ] no longer than is necessary to dispel the reasonable suspicion of danger and in any event no longer than it takes to complete the arrest and depart the premises." *Id.* at 335-36. Therefore, when officers have obtained an arrest warrant and they have reason to believe that the suspect is inside the house, they may search anywhere that the suspect might reasonably be found. *U.S. v. Stover*, 474 F.3d 904, 911 (6th Cir. 2007), *citing Maryland*

*v. Buie*, 494 U.S. at 332-33. Yet once a suspect is found, the arrest warrant does not justify a more intrusive search of the premises. *Id.*

Unlike the warrants for the arrest of Works and Estes, the Parties have not provided the Court with a copy of the search warrant at issue. Works and the Estes allege that after Schweier arrested Estes, but before the search warrant was executed, Schweier and the Doe officers began searching the garage behind the Works residence. Based on these allegations, the Court finds that the officers' search exceeded the scope permitted by the arrest warrant. Once Estes was arrested upstairs and removed from the home, it was not necessary for the officers to continue the search of the premises. Therefore, considering the allegations in a light most favorable to Works and the Estes, the Court finds that the Amended Third Party Complaint states a claim for unlawful entry.

Having found that a constitutional right has been violated, for purposes of the qualified immunity analysis, the Court must next decide whether that right was clearly established. The Court finds that it was. *Groh v. Ramirez*, 540 U.S. 551, 564 (2004) (stating that no reasonable officer could claim to be unaware of the basic rule, well established by Supreme Court precedence, that, absent consent or exigency, a warrantless search of the home is presumptively unconstitutional). Therefore, at this stage of the proceedings, the Court finds that Schweier and the Doe officers are not entitled to qualified immunity on Works and the Estes claim of unlawful entry.

### 7. Malicious prosecution (Constitutional law)

As stated above, to establish a claim for malicious prosecution under the Fourth Amendment, a plaintiff must show, at a minimum, that there was no probable cause to justify his or her arrest and prosecution. Here, there was a preliminary hearing which

resulted in a finding of probable cause to bind the matter over to the grand jury.  This finding will only lose its preclusive effect if there is evidence of false statements or misrepresentations by law enforcement officials during the hearing. *Hinchman*, 312 F.3d at 202-203; *Darrah*, 255 F.3d at 311.  While Works and the Estes allege that as a result of the investigation, Schweier and Officer John Doe knew or should have known that the charges against them were false, lacked probable cause, or were reckless in that regard, there are no factual allegations to support this statement.  Specifically, there is no indication that Schweier and John Doe knew or should have known that Works had permission to remove the nozzles.  The Amended Counterclaim and Third Party Complaint states that Schweier received his initial information from Jones.  At the preliminary hearing, Schweier testified that he learned from Jones that in August of 2005 that Works was given permission to remove approximately twenty nozzles, but that around 250 nozzles were recovered from Works' residence.  Schweier testified that he did not speak with Works' direct supervisor to determine if Works had been given permission to remove nozzles on other occasions.  Therefore, the Court finds that there was no constitutional violation as a matter of law, and Schweier, Rebholz, and Jane and John Doe Police Officers are entitled to qualified immunity against Works and the Estes' constitutional claim for malicious prosecution.[6]

### 8. **Declaratory Judgment**

In their Response to the West Chester Third Party Defendants' Motion to Dismiss, Counterclaimants and Third Party Plaintiffs conceded that they have failed to state a claim

---

[6]No claim for malicious prosecution under Ohio law has been brought against Schweier, Rebholz, and Jane and John Doe Police Officers.

for declaratory judgment.  Accordingly, this claim is DISMISSED.

II.    **CONCLUSION**

Based on the foregoing, it is hereby **ORDERED** that:

1.    Plaintiff's Motion For Emergency Order Of Possession (Filed in State Court) (Doc. 5) is **DENIED as MOOT**;

2.    Counterclaimants/Third-Party Plaintiffs' Motion for Leave (Doc. 30) is **GRANTED**;

3.    Counterclaimants/Third Party Plaintiffs' Motion to Amend/Correct Counterclaim and Third-Party Complaint (Doc. 31) is **GRANTED**;

    a.    Defendants/Third Party Plaintiffs' are hereby **ORDERED** to electronically file their Amended Counterclaim and Third-Party Complaint, attached to the Motion, within **ten (10) days** of entry of this Order;

4.    The Motion to Dismiss filed by Third Party Defendants Richard Jones, Lester Rogers (Doc. 12) is **GRANTED in PART and DENIED in PART**;

    a.    Counterclaimants/Third Party Plaintiffs' claim for tortious interference against Jones and Rogers is DISMISSED;

    b.    Counterclaimants/Third Party Plaintiffs' claims for malicious prosecution against Jones and Rogers remain pending;

5.    The Motion for Judgment on the Pleadings of OPW (Doc. 11) is **GRANTED in PART and DENIED in PART**;

    a.    Counterclaimants/Third Party Plaintiffs' claim for tortious interference against OPW is DISMISSED;

    b.    Counterclaimants/Third Party Plaintiffs' claims for malicious prosecution against OPW remain pending; and

6.    The Motion to Dismiss of Third Party Defendants West Chester Township, Andrew J. Schweier, Brian Rebholz, and Jane and John Doe Police Officers of West Chester Township (Doc. 13) is **GRANTED in PART and DENIED in PART**;

    a.    Counterclaimants/Third Party Plaintiffs' claims against West Chester

Township is DISMISSED and West Chester Township is DISMISSED as a party;

b.      Counterclaimants/Third Party Plaintiffs' claims for false arrest, unreasonable seizure, and malicious prosecution are DISMISSED;

c.      Counterclaimants/Third Party Plaintiffs' claim for unlawful entry remain pending against Third Party Defendants Andrew J. Schweier, and Jane and John Doe Police Officers;

d.      Because no claims remain pending against him, Third Party Defendant Brian Rebholz is DISMISSED as a party;

**IT IS SO ORDERED.**

       */s/ Michael R. Barrett*  _____

       Michael R. Barrett, Judge

       United States District Court